UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| WHITNEY NATIONAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-cv-02518-STA-dkv |
| | ) | |
| EDWARD A. LABRY, III, WILLIAM B. | ) | |
| BENTON, JR., and J. KEVIN ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

_____

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Plaintiff Whitney National Bank's ("Plaintiff") Motion for Summary Judgment (D.E. # 16), filed on May 11, 2010. Defendants Edward A. Labry, III ("Labry"), William B. Benton, Jr. ("Benton") and J. Kevin Adams ("Adams") (collectively, "Defendants") filed their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on June 30, 2010. (D.E. # 21.) Plaintiff filed a Reply Memorandum on July 9, 2010. (D.E. # 24.) And, Defendants filed a Sur-Reply on October 26, 2010. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**.

### BACKGROUND

On August 12, 2009, Plaintiff filed a Complaint against Defendants asking this Court to enforce collection of the indebtedness due Plaintiff under four commercial mortgage notes (collectively the "Four Notes") and various limited continuing guaranties (collectively the "Guaranties") executed by Defendants. Compl. ¶ 7. In the Complaint, Plaintiff seeks a judgment

1

against each Defendant, Labry, Benton, and Adams, in the principle amount of $1,116,000.00, plus, jointly and severally with all other Defendants, one hundred percent (100%) of all interest, costs, and reasonable attorneys' fees. (*Id.* at 8.)  The following facts are undisputed for purposes of this Motion unless otherwise noted.

Plaintiff is the owner and holder of the Four Notes, which are outstanding as of June 17, 2008.  Pl.'s Statement of Facts ¶ 1.  Plaintiff asserts that Defendants "jointly and severally guaranteed the Four Notes such that each agreed to pay his respective thirty percent (30%) of the principal amount of the obligations outstanding under the Four Notes as of June 17, 2008, plus one hundred percent (100%) of all interest, attorneys' fees, and other fees and charges."  (*Id.* ¶ 2.) Defendants note that while they did execute the Guaranties, reproduced in pertinent part below, Defendants deny being collectively liable for as much as ninety percent (90%) of the underlying debt and deny being liable for one hundred percent (100%) of all interest, attorneys' fees and other fees and charges.  Defs.' Resp. to Pl.'s Statement of Facts ¶ 2.

Different limited liability companies ("LLCs") executed each of the Four Notes.  Pl.'s Statement of Facts ¶ 3.  These LLCs include AB7G, LLC ("AB7G"), AB8G, LLC ("AB8G"), AB9G, LLC ("AB9G"), and AB10G ("AB10G") (collectively, "the Borrower Entities").  (*Id.*) The Borrower Entities are all Florida LLC's domiciled in and engaging in business in the state of Florida. (*Id.* ¶ 4.)

Below is a description of each of the Four Notes:

<u>Note 1</u>

To evidence a loan of $1,080,000.00, AB7G executed a Promissory Note dated October 24, 2005, in the original principal amount of $1,080,000.00, payable to the order of Plaintiff, as

modified by that certain Change in Terms Agreement, dated October 24, 2006, executed by AB7G, in the original principal amount of $1,080,000.00, payable to the order of Plaintiff, as further modified by that certain Change in Terms Agreement, dated January 24, 2007, executed by AB7G, in the original principal amount of $1,080,000.00, payable to the order of Plaintiff, as further modified by that certain Changed in Terms Agreement, dated January 24, 2008, executed by AB7G, in the original amount of $1,080,000.00, payable to the order of Plaintiff.  (*Id.* ¶ 5.)

<u>Note 2</u>

To evidence a loan of $800,000.00, AB8G executed a Promissory Note dated October 24, 2005, in the original principal amount of $800,000.00, payable to the order of Plaintiff, as modified by that certain Change in Terms Agreement, dated October 24, 2006, executed by AB8G, in the original principal amount of $800,000.00, payable to the order of Plaintiff, as further modified by that certain Change in Terms Agreement, dated January 24, 2007, executed by AB8G, in the original principal amount of $720,000.00, payable to the order of Plaintiff, as further modified by that certain Changed in Terms Agreement, dated January 24, 2008, executed by AB8G, in the original amount of $720,000.00, payable to the order of Plaintiff.  (*Id.* ¶ 6.)

<u>Note 3</u>

To evidence a loan of $800,000.00 AB9G executed a Promissory Note dated October 24, 2005, in the original principal amount of $800,000.00, payable to the order of Plaintiff, as modified by that certain Change in Terms Agreement, dated October 24, 2006, executed by AB9G, in the original principal amount of $800,000.00, payable to the order of Plaintiff, as further modified by that certain Change in Terms Agreement, dated January 24, 2007, executed by AB9G, in the original principal amount of $720,000.00, payable to the order of Plaintiff, as

further modified by that certain Changed in Terms Agreement, dated January 24, 2008, executed by AB9G, in the original amount of $720,000.00, payable to the order of Plaintiff.  (*Id.* ¶ 7.)

Note 4

To evidence a loan of $1,200,000.00 AB10G executed a Promissory Note dated October 24, 2005, in the original principal amount of $1,200,000.00, payable to the order of Plaintiff, as modified by that certain Change in Terms Agreement, dated October 24, 2006, executed by AB10G, in the original principal amount of $1,200,000.00, payable to the order of Plaintiff, as further modified by that certain Change in Terms Agreement, dated January 24, 2007, executed by AB10G, in the original principal amount of $1,200,000.00, payable to the order of Plaintiff, as further modified by that certain Changed in Terms Agreement, dated January 24, 2008, executed by AB10G, in the original amount of $1,200,000.00, payable to the order of Plaintiff.  (*Id.* ¶ 8.)

The Borrower Entities respectively breached certain terms and conditions of Note 1, Note 2, Note 3, and Note 4, when the Borrower Entities failed to make the required payments respectively due upon maturity of the Four Notes. (*Id.* ¶ 9.)  To date, the indebtedness under the Four Notes has not been paid in full.  (*Id.* ¶ 10.)  Defendants are included in this matter as a result of the Guaranties they each executed with respect to the Four Notes. (*Id.* ¶ 11.)

Plaintiff states that Labry "jointly and severally guaranteed thirty percent (30%) of the obligations of Note #1, Note #2, Note #3, and Note #4, outstanding as of June 17, 2008, plus one hundred percent (100%) of all interest, attorneys' fees, and other fees and charges when he executed a Limited Continuing Guaranty for each of the Four Notes, all with effective dates of October 17, 2005 [(collectively "the Labry Guaranties")][.]" (*Id.* ¶ 12.)

Likewise, Plaintiff states that Benton "jointly and severally guaranteed thirty percent (30%) of the obligations of Note #1, Note #2, Note #3, and Note #4, outstanding as of June 17, 2008, plus one hundred percent (100%) of all interest, attorneys' fees, and other fees and charges when he executed a Limited Continuing Guaranty for each of the Four Notes, all with effective dates of October 17, 2005 [(collectively "the Benton Guaranties")][.]" (*Id.* ¶ 13.)

And, lastly, Plaintiff states that Adams "jointly and severally guaranteed thirty percent (30%) of the obligations of Note #1, Note #2, Note #3, and Note #4, outstanding as of June 17, 2008, plus one hundred percent (100%) of all interest, attorneys' fees, and other fees and charges when he executed a Limited Continuing Guaranty for each of the Four Notes, all with effective dates of October 17, 2005 [(collectively "the Adams Guaranties")][.]" (*Id.* ¶ 14.)

To each of these statements, Defendants admit that they each executed the Guaranties. However, Defendants again deny that Labry, Benton and Adams are collectively liable for as much as ninety percent (90%) of the underlying debt or that they are liable for one hundred percent (100%) of all interest, attorneys' fees and other fees and charges. Defs.' Resp. to Pl.'s Statement of Facts ¶ 12, 13, 14.

The Court notes that Labry, Benton, and Adams each individually signed four identical Guaranties for each of the Four Notes.

On June 17, 2008, Plaintiff made demands upon Defendants for payment of their indebtedness due under the Four Notes. Pl.'s Statement of Facts ¶ 16. Plaintiff states that Defendants have failed to honor their respective obligations under the terms of the Labry Guaranties, Benton Guaranties, and Adams Guaranties by their failure to make the required payments and pay the outstanding balances due under the Four Notes, all as demanded by

Plaintiff.  (*Id.* ¶ 17.)  To this, Defendants simply deny that they are liable to Plaintiff.  Defs.'
Resp. to Pl.'s Statement of Facts ¶ 17.

Plaintiff states that the total amount due on Note 1 is the principal amount of
$1,080,000.00, plus accrued interest in the amount of $376,379.99 all as of the 27th day of April,
2010, with interest continuing to accrue on the unpaid principal balance from and after April 27,
2010 at the per diem rate of $540.00, plus appraisal fees of $125.  Pl.'s Statement of Facts ¶ 18.
Defendants admit that the principal amount of Note 1 is $1,080,000.00.  Defs.' Resp. to Pl.'s
Statement of Facts ¶ 18.  Further, Defendants state that Plaintiff has charged the above stated
interest and fees, but Defendants deny that they are liable to Plaintiff for these amounts.  (*Id.*)

Plaintiff states that the total amount due on Note 2 is the principal amount of $720,000,
plus accrued interest in the amount of $250,920.00, and late charges in the amount of $225.00,
all as of the 27th day of April, 2010, with interest continuing to accrue on the unpaid principal
balance from and after April 27, 2010 at the per diem rate of $360.00, plus appraisal fees of
$125.  Pl.'s Statement of Facts ¶ 19.  Defendants admit that the principal amount of Note 1 is
$720,000.00.  Defs.' Resp. to Pl.'s Statement of Facts ¶ 19.  Further, Defendants state that
Plaintiff has charged the above stated interest and fees, but Defendants deny that they are liable
to Plaintiff for these amounts.  (*Id.*)

Plaintiff states that the total amount due on Note 3 is the principal amount of
$720,000.00, plus accrued interest in the amount of $250,920.00, and late charges in the amount
of $225.00, all as of the 27th day of April, 2010, with interest continuing to accrue on the unpaid
principal balance from and after April 27, 2010 at the per diem rate of $360.00, plus appraisal
fees of $250.  Pl.'s Statement of Facts ¶ 20.  Defendants admit that the principal amount of Note

1 is $720,000.00.  Defs.' Resp. to Pl.'s Statement of Facts ¶ 20.  Further, Defendants state that Plaintiff has charged the above stated interest and fees, but Defendants deny that they are liable to Plaintiff for these amounts.  (*Id.*)

Plaintiff states that the total amount due on Note 4 is the principal amount of $1,200,000.00, plus accrued interest in the amount of $418,199.99 and later charges in the amount of $10.00, all as of the 27th day of April, 2010, with interest continuing to accrue on the unpaid principal balance from and after April 27, 2010 at the per diem rate of $600.00, plus appraisal fees of $250.  Pl.'s Statement of Facts ¶ 21.  Defendants admit that the principal amount of Note 1 is $1,200,000.00.  Defs.' Resp. to Pl.'s Statement of Facts ¶ 21.  Further, Defendants state that Plaintiff has charged the above stated interest and fees, but Defendants deny that they are liable to Plaintiff for these amounts.  (*Id.*)

Therefore, Plaintiff states that according to the Notes and the terms of the Labry Guaranties, Labry is indebted to Plaintiff in the principal amount of $1,116,000.00, plus, jointly and severally with all other Defendants, one hundred percent (100%) of all interest, costs and reasonable attorneys' fees.  Pl.'s Statement of Facts ¶ 22.  Plaintiff further states that according to the Notes and the terms of the Benton Guaranties, Benton is indebted to Plaintiff in the principal amount of $1,116,000.00, plus, jointly and severally with all other Defendants, one hundred percent (100%) of all interest, costs and reasonable attorneys' fees.  (*Id.* ¶ 23.)  And, lastly, Plaintiff states that according to the Notes and the terms of the Adams Guaranties, Adams is indebted to Plaintiff in the principal amount of $1,116,000.00, plus, jointly and severally with all other Defendants, one hundred percent (100%) of all interest, costs and reasonable attorneys' fees.  (*Id.* ¶ 24.)

To each of these statements, Defendants assert that "absent [Plaintiff's] breaches of the duty of good faith and fair dealing and failure to protect the collateral, it is possible under the documents for Labry, Benton and Adams to be collectively liable for a max of thirty percent (30%) of the 'Obligations' as that term is defined in the [Guaranties]." Defs.' Resp. to Pl.'s Statement of Facts ¶ 22, 23, 24.

Plaintiff then notes that it previously filed suit against Defendants, as well as AB7G and AB8G, in the Circuit Court of the First Judicial Circuit in and for Walton County, Florida related to the same matter as in this case. Pl.'s Statement of Facts ¶ 25. Defendants note that while it is true that Plaintiff originally filed suit against Defendants in Florida, the Florida suit was dismissed against the Defendants for want of personal jurisdiction. Defs.' Resp. to Pl.'s Statement of Facts ¶ 25. Plaintiff then states that it filed motions for summary judgment in those cases, and that in response to those motions, the remaining defendants, in the Florida case, raised the same arguments as alleged in the affirmative defenses in this litigation. Pl.'s Statement of Facts ¶ 26. Defendants here do note that the defendants in the Florida cases did resist summary judgment; however, state that the cases cited and relied upon by Defendants in this case are separate and distinct from the cases cited and relied upon in the Florida cases. Defs.' Resp. to Pl.'s Statement of Facts ¶ 26.

Plaintiff states that on October 16, 2009, the Walton County Court entered a Final Judgment in Favor of Plaintiff, ordering that Plaintiff "shall recover from AB8G . . . Judgment Total of $908,120.50 with interest continuing to accrue . . . ."[1] Pl.'s Statement of Facts ¶ 27.

_____

[1] Specifically, the Court found, in part, that:
   3.  The Plaintiff shall recover from AB8G the following sums from the promissory note sued upon:

Defendants state that AB8G has had a judgment rendered against it and that the case is on appeal; however, Defendants note that no court has found the Defendants in this matter liable to Plaintiff. Defs.' Resp. to Pl.'s Statement of Facts ¶ 27.  Similarly, Plaintiff notes that on December 3, 2009, the Walton County Court entered a Final Judgment in favor of Plaintiff, ordering that Plaintiff "recover from AB7G . . . Judgment Total $1,374,312.42 with interest continuing to accrue . . . ."[2]  Pl.'s Statement of Facts ¶ 28.  Defendants again state that AB7G has had a

|  |  |  |
|---|---|---|
| Principal: | | $720,000.00 |
| Interest through October 16, 2009 | | $181,380.00 |
| Late Charges | | $225.00 |
| Appraisal Fees | | $125.00 |
| | Subtotal | $901,730.00 |
| COSTS: | | |
| Clerk's fees | | $427.50 |
| Service of Process Fees | | $530.00 |
| | Costs Subtotal | $957.50 |
| JUDGMENT SUBTOTAL | | $902,687.50 |
| ATTORNEYS' FEES | | $5,433.00 |
| | JUDGMENT TOTAL | $908,120.50 |

4.    The Plaintiff shall recover from Bradley, LaPlante and Zeitlin, jointly and severally, the following sums from the promissory note and guarantees sued upon:

|  |  |  |
|---|---|---|
| Principal: | | $504,000.00 |
| 70% of the Interest through Oct. 16, 2009 | | $126,966.00 |
| 70% of the Late Charges | | $157.50 |
| 70% of the Appraisal Fees | | $87.50 |
| | Subtotal | $631,211.00 |
| COSTS: | | |
| 70% of the Clerk's fees | | $299.25 |
| 70% of the Service of Process Fees | | $371.00 |
| | Costs Subtotal | $670.25 |
| JUDGMENT SUBTOTAL | | $631,881.25 |
| 70% of ATTORNEYS' FEES | | $3,803.10 |
| | JUDGMENT TOTAL | $635,684.35 |

[2]  Specifically, the Court found, in part, that:

4.    The Plaintiff recover from AB7G the following sums from the promissory note sued

judgment rendered against it and that the case is on appeal; however, Defendants again note that

no court has found Defendants liable to Plaintiff.  Defs.' Resp. to Pl.'s Statement of Facts ¶ 28.

Defendants set forth the following additional statements of fact to which the Plaintiff did

not directly respond.

---

upon:

| | |
|---|---|
| Principal: | $1,080,000.00 |
| Interest through October 16, 2009 | $277,559.99 |
| Appraisal Fees | $125.00 |
| Subtotal | $1,357,559.99 |
| COSTS: | |
| Clerk's fees | $375.00 |
| Service of Process Fees | $465.00 |
| Westlaw research | $1,002.00 |
| Postage and Express Mail | $95.32 |
| Copies | $102.00 |
| Travel | $97.11 |
| Costs Subtotal | $2,136.43 |
| JUDGMENT SUBTOTAL | $1,359,696.43 |
| ATTORNEYS' FEES | $14,616.00 |
| JUDGMENT TOTAL | $1,374,312.42 |

5.      The Plaintiff recover from Bradley, LaPlante and Zeitlin, jointly
and severally, the following sums from the promissory note and guarantees sued upon:

| | |
|---|---|
| Principal: | $756,000.00 |
| Interest through Oct. 26, 2009 | $277,559.99 |
| Appraisal Fees | $125.00 |
| Subtotal | $1,033,684.99 |
| COSTS: | |
| Clerk's fees | $375.00 |
| Service of Process Fees | $465.00 |
| Westlaw research | $1,002.00 |
| Postage and Express Mail | $95.32 |
| Copies | $102.00 |
| Travel | $97.11 |
| Costs Subtotal | $97.11 |
| JUDGMENT SUBTOTAL | $1,035,821.42 |
| ATTORNEYS' FEES | $14,616.00 |
| JUDGMENT TOTAL | $1,050,437.42 |

Defendants note that this lawsuit arises from financing transactions involving four separate undeveloped residential lots within the real estate development known as Alys Beach Subdivision in South Walton County, Florida ("Alys Beach") as follows: Lot 7 owned by AB7G; Lot 8 owned by AB8G; Lot 9 owned by AB9G; and Lot 10 owned by AB10G.  Defs.' Statement of Facts ¶ 1.  Defendants state that on or about October 24, 2005, the Borrower Entities acquired Alys Beach lots 7, 8, 9, 10 respectively (collectively, the "AB Lots"), from EBSCO Gulf Coast Development, Inc. ("EBSCO").  (*Id.* ¶ 2.) Defendants note that EBSCO is the developer of Alys Beach.  (*Id.* ¶ 3.)

Defendants state that as of the date of the Borrower Entities' acquisition of the AB Lots, the Borrower Entities consisted of 474 Club, LLC ("474 Club"), holding a 30% membership interest in each of the Borrower Entities, and Mozaic Capital Partners II, LLC ("Mozaic"), holding a 70% membership interest in each of the Borrower Entities.  The operating agreements for the Borrower Entities each identify Mozaic as the "Founding Member" and 474 Club as the "Investor."  (*Id.* ¶ 4.)  As of the date of the Borrower Entities' acquisition of the AB Lots, 474 Club consisted of two members: Labry and B&K Interests, LLC ("B&K").  (*Id.* ¶ 6.)  The members of B&K are Adams and Benton.  (*Id.*)  As of the date of the Borrower Entities' acquisition of the AB Lots, Mozaic consisted of three members: Steven R. Bradley, Jon LaPlante and Brad Zeitlin (collectively, the "Florida Guarantors").  (*Id.* ¶ 7.)

Defendants state that they had no involvement in the negotiation with EBSCO culminating in the acquisition of the AB Lots by the Borrower Entities, or in the negotiation with Plaintiff for the purchase money financing of the AB Lots.  (*Id.* ¶ 8.)  Defendants did not review or approve any commitment letter issued by Plaintiff.  (*Id.*)  Moreover, Defendants do not recall

any occasion in which they received any communication directly from Plaintiff, in writing, by telephone or otherwise in advance of the closing of the AB Lots.  (*Id.*) All negotiations with EBSCO and Plaintiff prior to the acquisition of the AB Lots and the closing of the Plaintiff's loan were handled by one or more of the members of Mozaic.  (*Id.* ¶ 9.)

One or more members of Mozaic provided copies of the Borrower Entities' operating agreement to Plaintiff in advance of the loans being made.  (*Id.* ¶ 12.)  Section 3.8 of those operating agreements states:

> 3.8 *Loan Guarantys.*  To the extent that any financing agreement with respect to the Project requires guarantys of the members, then each Member agrees to and shall execute appropriate guaranty agreements acceptable to the Company's lenders of the indebtedness; provided however, Investor [474 Club] shall in no event be obligated to guaranty any portion of the Company's indebtedness in excess of Investor's Percentage.

(*Id.* ¶ 14.)

Defendants understood, just as the operating agreements provide, that the Defendants' collective obligation under any guaranty documents required to be signed to secure the Plaintiff loans to the Borrower Entities would not exceed thirty percent (30%) of the Borrower Entities' obligations to Plaintiff, corresponding to Defendants collective indirect ownership of the Borrower Entities through 474 Club's thirty percent (30%) membership interest in the Borrower Entities.  (*Id.* ¶ 15.)

On or about October 12 or 13, 2005, the Mozaic asked Defendants to sign the originals of the thirty percent (30%) Guaranties.  (*Id.* ¶ 16.)  Defendants delivered the signed guaranties to Mozaic for simultaneous presentation at the closing of the acquisition of the AB Lots and the closing of the purchase money financing by Plaintiff.  (*Id.* ¶ 18.)

12

Defendants state that in signing and delivering the Guaranties and in participating in 474 Club, as the "Investor" in Borrower Entities, the Defendants understood that the underlying real property collateral was marketable in all respects.  (*Id.* ¶ 22.)  Defendants highlight that in court filings on a separate matter, EBSCO has taken the position that the title to the AB Lots is subject to a two-year build out covenant that runs with the land that entitles EBSCO to impose certain fines and penalties upon the Borrower Entities and any subsequent purchaser, accruing monthly for so long as the AB Lots are not developed following the expiration of the initial two year period.  (*Id.* ¶ 23.)  The fines purportedly running with the land on the AB Lots total $1,561,000 and are increasing at the rate of $48,500 per month.  (*Id.* ¶ 24.)  The two-year build out covenant is not binding upon a subsequent purchaser acquiring the AB Lots at a foreclosure sale; therefore, upon the foreclosure of the AB Lots, all of the claimed fines and penalties would be canceled. (*Id.* ¶ 25.)

In court filings in a separate matter, EBSCO also takes the position that the title to the AB Lots is subject to a covenant that runs with the land entitling EBSCO to repurchase the AB Lots at ninety percent (90%) of the then current market value, and that such covenant is also binding upon any subsequent purchaser from the Borrower Entities, resulting in such purchaser being required to sell the AB Lots for ten percent (10%) less than the price paid by such purchaser to the Borrower Entities.  (*Id.* ¶ 26.)

According to the Defendants, the repurchase covenant is not binding upon a subsequent purchaser acquiring the AB Lots at a foreclosure sale; therefore, upon the foreclosure of the AB Lots, such repurchase covenant would have no further effect upon the title to the AB Lots.  (*Id.* ¶ 27.)  The AB Lots are encumbered with mortgages or deeds of trust entitling Plaintiff to

13

foreclose the AB Lots.  (*Id.* ¶ 28.)  The AB Lots are not marketable by the Borrower Entities so

long as the restrictive covenants remain in place.  (*Id.* ¶ 29.)  The Florida Guarantors and AB9G

had the lots appraised by, Jason Shirley ("Shirley"), a professional appraiser in Florida.  (*Id.* ¶

30.)

> Shirley opined that:
>
>> While I assert no opinion as to the legality of the ability to penalize future purchasers of the Lots via levying various "fines" or EBSCO's ability to repurchase the lots from future purchasers at less than fair market value, clearly should these be determined to be enforceable against future purchasers, the marketability of the Lots is significantly affected to the point of making the Lots unmarketable to third party purchasers. . . .

(*Id.* ¶ 32.)

Defendants assert that the marketability of the AB Lots would be significantly improved

upon Plaintiff's exercise of its right to foreclose and sell the land, thereby insuring the recovery

of the Plaintiff's loans, in whole or in part.  (*Id.* ¶ 33.)  And, by electing to forego foreclosure,

Defendants state that Plaintiff has intentionally left the impairments in place resulting in serious

prejudice to the interests of the Defendants.  (*Id.* ¶ 36.)

The Court notes that neither party included the language of the Guaranties in their

statement of facts; however, the Court finds it important to reproduce the relevant language of

the Guaranties below.

### Limited Continuing Guaranty

> The undersigned (hereinafter sometimes referred to as "Guarantor", which term means individually, collectively, and interchangeably any, each and/or all of them) hereby gives to Whitney National Bank ("Bank") this Limited Continuing Guaranty (this "Guaranty") for the purpose of guarantying the obligations of [AB7G, LLC and AB8G, LLC and AB9G, LLC and AB10G, LLC], a Florida limited liability company (hereinafter referred to as "Borrower", which terms means Individually,

collectively, and interchangeably any, each and/or all of them).  Guarantor agrees as follows:

1.     Guarantor jointly, severally and unconditionally guarantees to Bank the prompt payment in full of all obligations and liabilities of Borrower to Bank, direct or contingent, due or to become due, now existing or hereafter arising, including, without limitation, all future advances, with interest, attorneys' fees, expenses of collection and costs, and further including, without limitation, obligations to Bank on promissory notes, checks, overdrafts, letter-of-credit agreements, loan agreements, security documents, endorsements and continuing guaranties (collectively, the "Obligations"), plus attorneys' fees, expenses of collection and costs owed by Guarantor for the enforcement of, or related to, this Guaranty, but in no event shall Guarantor's liability under this Guaranty exceed THIRTY PER CENT (30%) of the principal amount of the Obligations outstanding at the time that Bank first gives written notice of default to Borrower on any of the Obligations, plus interest, attorneys' fees, and other fees and charges owed by Borrower to Bank on the Obligations plus attorneys' fees, expenses of collection and costs owed by Guarantor for the enforcement of, or related to, this Guaranty.  Parties obligated on the Obligations are referred to herein as "Obligor", which term means individually, collectively, and interchangeably any, each and/or all of them.

5.     If this Guaranty is executed by more than one person, each person is bound by all of the provisions of this Guaranty and is jointly and severally liable for the payment in full of the Obligations up to the full amount of this Guaranty as if such person was the only person executing this Guaranty.

In its Motion, Plaintiff argues that summary judgment is warranted as it is undisputed that

Defendants are jointly and severally liable as guarantors for the obligations set forth in the Four

Notes.  Plaintiff states that it is undisputed that Defendants each executed valid and enforceable

Guaranties on the Four Notes held by Plaintiff.  Plaintiff specifically notes that these Guaranties

"indicate that Defendants, in their individual capacities, 'jointly, severally, and unconditionally'

guarantee Plaintiff 'the prompt payment in full of all obligations and liabilities of Borrower to

Bank . . . including, without limitation . . . attorney's fees [and] expenses of collection and costs .

. . .'"  Plaintiff further states that there is no genuine issue of material fact that Defendants

breached the terms of their Guaranties.  Therefore, Plaintiff argues that summary judgment is

warranted and the Court should award Plaintiff the outstanding balance of the Four Notes, plus one hundred percent (100%) of all interest, attorneys' fees, and other fees and charges.

Defendants, on the other hand, argue that this Court should not grant summary judgment because under the Guarantees their potential liability on the outstanding balance of the Four Notes is limited to a collective thirty percent (30%) and that, with respect to the percentage Plaintiff is entitled to regarding attorneys' fees, interest, and costs, the language of the Guaranties is ambiguous. Specifically, Defendant states that Plaintiff takes the position that each of the Defendants owe a thirty percent (30%) guaranty such that they collectively are liable for a ninety percent (90%) guaranty. Defendants state that the language of the Guaranties do not support this position and that, according to Florida law, guaranties are to be construed in favor of the guarantors–here, the Defendants. Additionally, Defendants assert that Plaintiff's entitlement to attorneys' fees, interest and costs is, at best, ambiguous. Thus, Defendants argue that facts are still in dispute and summary judgment should be denied.

The parties both briefed an additional issue in their filings–the issue of whether Plaintiff's refusal to foreclose impairs the collateral and, as such, is a breach of the duty of good faith and fair dealing. At this point, however, the Court does not have enough information to rule on this particular issue. If the parties wish for the Court to rule on this issue, the Court orders both the Plaintiff and Defendants to re-file a legible copy of the Commercial Mortgage Notes and the Change in Terms Agreements ("Notes") and to re-brief the issue. Both parties contend that the Notes and Guarantees contain express provisions regarding this issue, yet, the Court cannot read the Notes and neither party cites to any specific language. Consequently, the Court has no option but to reserve ruling on this issue.

16

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter
of law.[3]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[4]  When the motion is supported by documentary proof such as

depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

present some "specific facts showing that there is a genuine issue for trial."[5]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[6]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

verdict.[7]  When determining if summary judgment is appropriate, the Court should ask "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-side that one party must prevail as a matter of law."[8]

Summary judgment must be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

---

[3] Fed. R. Civ. P. 56(a).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[6] *Matsushita*, 475 U.S. at 586.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id*. at 251-52 (1989).

17

party will bear the burden of proof at trial."[9]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [its] asserted causes of action."[10]  Finally, the "judge may not make credibility determinations or weigh the evidence."[11]

## ANALYSIS

To begin, this Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332.  The Guaranties at issue specify that they are to be governed and interpreted by Florida law.[12]  Consequently, the Court will apply the substantive law of Florida in this matter.

According to Florida law, a "guaranty" is a collateral promise to answer for the debt or obligation of another.[13]  Rules applicable to contracts generally apply to guaranties.[14]  "If a guaranty is clearly not ambiguous, it must be construed in accordance with the plain meaning of

---

[9] *Celotex*, 477 U.S. at 322.

[10] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[11] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[12]  The Guarantees each specify that "[t]his Guaranty shall be governed and Interpreted under the internal laws of the State of Florida."

[13]  *Fed. Deposit Ins. Corp. v. University Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir. 1985).

[14]  *Lockheed Martin Corp. v. Galaxis USA,* Ltd., 222 F. Supp. 2d 1315, 1325 (M.D. Fla. 2002); *Warner v. Caldwell*, 354 So. 2d 91, 96 (Fla. Dist. Ct. App. 1977).

the words contained therein."[15]  Moreover, "[i]f a guaranty is free from ambiguity, it is strictly

construed in favor of the guarantor."[16]

While neither party here disputes the existence of  valid Guaranties, the parties do have

differing interpretations as to the language of the Guaranties.  As mentioned above, Plaintiff

argues that the language is clear and unambiguous–in that "[t]he Guarantees indicate that

Defendants, in their individual capacities, 'jointly, severally, and unconditionally' guaranteed

Plaintiff prompt payment in full of thirty percent (30%) of the principal obligations" plus "one

hundred percent (100%) of all interest, attorneys' fees, and other fees and charges."  Plaintiff,

consequently, requests that this Court grant its Motion and enter a judgment against Labry in the

principal amount of $1,116,000.00, plus, jointly and severally with all other Defendants, one

hundred percent (100%) of all interest, costs and reasonable attorneys' fees; against Benton in the

principal amount of $1,116,000.00, plus, jointly and severally with all other Defendants, one

hundred percent (100%) of all interest, costs and reasonable attorneys' fees; and against Adams

in the principal amount of $1,116,000.00, plus, jointly and severally with all other Defendants,

one hundred percent (100%) of all interest, costs and reasonable attorneys' fees.  The Court notes

that $1,116,000.00 is thirty percent (30%) of the principal obligation remaining under the Four

Notes.  Defendants, on the other hand, argue that their potential liability under the Guaranties is

limited to a collective thirty percent (30%) of the outstanding balance of the Four Notes.

---

[15]  *Keybank Nat'l Ass'n v. Willoughby,* No. 2:09-cv-662-FtM-SPC, 2010 WL 3212086, at *3 (M.D. Fla. Aug. 12, 2010) (citing *Rev v. Guy Gannett Publ'g Co.,* 766 F. Supp. 1142, 1146 (S.D. Fla. 1991)).

[16]  *Fed. Deposit Ins. Corp.,*764 F.2d at 806 (citing *Scott v. City of Tampa,* 30 So.2d 300, 302 (Fla. 1947)).

Moreover, Defendants state that the language of the Guaranties regarding the subject of interest, attorneys' fees, expenses of collection, and costs contains superfluous and inconsistent language, and, as such, is, at best, ambiguous.

The Court does not find the language of the Guaranties to be ambiguous.  In fact, the Court finds the language to be rather clear.  Section 5 of the Guaranties reads that "[i]f this Guaranty is executed by more than one person . . . ."–the Court stops here and notes that the Guaranties for the obligations of AB7G, AB8G, AB9G, and AB10G were each executed by Labry, Benton, and Adams.  Section 5 goes on to state that "each person is bound by all of the provisions of this Guaranty and is jointly and severally liable for the payment in full of the Obligations up to the full amount of this Guaranty as if such person was the only person executing this Guaranty."  According to Black's Law Dictionary, the term "joint and several liability" means:

> Liability that may be apportioned either among two or more parties or to only one or a few select members of the group, at the adversary's discretion.  Thus, each liable party is individually responsible for the entire obligation, but a paying party may have a right of contribution and indemnity from nonpaying parties.

Thus, according to the Guaranties and the definition of joint and several liability, if the provisions of the Guaranties are not met, liability may be apportioned between Labry, Benton, and Adams for the full payment of the obligations at the discretion of Plaintiff.

Next, the Court looks to what full payment of the obligations would be under the Guaranties.  Section 1 of the Guaranties begins:

> Guarantor[17] jointly, severally, and unconditionally guarantees to Bank the prompt payment in full of all obligations and liabilities of Borrower to Bank, direct or contingent, due or to become due, now existing or hereafter arising, including, without limitation, all future advances, with interest, attorneys' fees, expenses of collection and costs, and further including, without limitation, obligations to Bank on promissory notes, checks, overdrafts, letter-of-credit agreements, loan agreements, security documents, endorsements and continuing guaranties (collectively, the 'Obligations') plus attorneys' fees, expenses of collection and costs owed by Guarantor for the enforcement of, or related to, this Guaranty . . .

The Court stops here and notes that this language includes all liabilities of Borrower to Bank (the outstanding balance of the Four Notes), interest, attorneys' fees, expenses of collection and costs, and attorneys' fees, expenses of collection and costs owed by Guarantor for the enforcement of the Guarantees. Section 1 then goes on to limit the Guarantor's liability by noting that

> but in no event shall Guarantor's liability under this Guaranty exceed THIRTY PER CENT (sic) (30%) of the principal amount of the Obligations outstanding at the time that Bank first gives written notice of default to Borrower on any of the Obligations, plus interest, attorneys' fees, and other fees and charges owed by Borrower to Bank on the Obligations plus attorneys' fees, expenses of collection and costs owed by Guarantor for the enforcement of, or related to, this Guaranty.

Strictly construing the Guaranties in favor of the Guarantors, the Court finds the "full payment" to include thirty percent (30%) of all of the "Obligations" (the liabilities of Borrower to Bank, interest, attorneys' fees, expenses of collection and costs) and thirty percent (30%) of the attorneys' fees, expenses of collection, and costs owed by Guarantor for the enforcement of the Guaranties.

Reading sections 1 and 5 together, the Court finds Plaintiff's interpretation of the Guaranties to be untenable. Defendants state, and Plaintiff does not seem to dispute, that Plaintiff is seeking to recover thirty percent (30%) from Labry, thirty percent (30%) from Benton,

---

[17] Under the Guaranties, "Guarantor" is defined as meaning "individually, collectively, and interchangeably any, each and/or all of them."

and thirty percent (30%) from Adams for a collective ninety percent (90%) of the outstanding balance under the Four Notes.  As noted above, the Court found that if the provisions of the Guaranties are not met, liability may be apportioned between Labry, Benton, and Adams for the full payment of the obligations at the discretion of the Plaintiff.  Moreover, the limitation clause of the Guaranties limits the Defendants' liability to thirty percent (30%) of the outstanding balance of the Four Notes.  Thus, if the provisions of the Guaranties are not met, Labry, Benton, and Adams are jointly and severally liable for thirty percent (30%) of the outstanding balance of the Four Notes.  Additionally, Plaintiff argues that Defendants are liable jointly and severally for one hundred percent (100%) of all interest, costs, and reasonable attorneys' fees.  This argument is likewise untenable under the language of the Guaranties.  The Court finds that the interest, costs, and reasonable attorneys' fees are subject to the limitation clause as well.  Thus, Plaintiff may recover no more than thirty percent (30%) of all interest, attorneys' fees, expenses of collection, and costs.  Therefore, if the provisions of the Guaranties were not met, Defendants would be jointly and severally liable for thirty percent (30%) of all interest, attorneys' fees, expenses of collection, and costs.

Consequently, because the Court finds the language of the Guaranties to be clear and unambiguous, and Plaintiff's interpretation is different from the Court's findings, summary judgment is denied.

### **CONCLUSION**

For the reasons set forth above, Plaintiff Whitney National Bank's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

22

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 29, 2011