UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BIEL LOANCO III-A, LLC, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    No. 09-2518-STA-dkv |
| | ) |
| EDWARD A. LABRY, III, WILLIAM B. BENTON, JR., and J. KEVIN ADAMS, | ) |
| | ) |
|       Defendant. | ) |

_____

**ORDER DENYING MOTION TO REVISE THE COURT'S ORDER GRANTING SUMMARY JUDGMENT**
_____

Before the Court is Defendants' Motion to Revise the Court's Order Granting Summary Judgment (D.E. # 59), filed on April 6, 2012. Plaintiff filed a Response (D.E. # 61) on April 23, 2012. For the following reasons, Defendants' Motion is **DENIED**.

**BACKGROUND**

On August 12, 2009, Plaintiff filed a Complaint against Defendants asking this Court to enforce collection of the indebtedness due Plaintiff under four commercial mortgage notes (the "Four Notes") and various limited continuing guaranties (the "Guaranties") executed by Defendants. (Compl. ¶ 7.) In the Complaint, Plaintiff sought a judgment against Labry, Benton, and Adams in the principle amount of $1,116,000.00, plus, jointly and severally with all other Defendants, one hundred percent (100%) of all interest, costs, and reasonable attorneys' fees. (*Id.* at 8.) Plaintiff filed its first Motion for Summary Judgment on May 11, 2010 (D.E. # 15-16.) After the parties filed a response, reply, and sur-reply, the Court entered an order denying

1

Plaintiff's Motion on March 29, 2011. (D.E. # 33.) Plaintiff filed a Second Motion for Summary Judgment alleging nearly identical facts and arguments on July 27, 2011. (D.E. # 44.)

After briefing on the second Motion for Summary Judgment was completed, the Court held a hearing on the parties' Motion to Continue Trial (D.E. # 52) on February 28, 2012. At that hearing, the Court discussed Plaintiff's Second Motion for Summary Judgment and Defendants' Rule 56(d) Affidavit. Although counsel for Defendants indicated that he had not filed a Rule 56(d) Affidavit, Plaintiff indicated that it had intended to include documents related to an additional lawsuit in Florida ("the Florida Lawsuit") in its Second Motion. In light of this revelation, the Court granted Plaintiff ten days to file supplemental briefing so that Plaintiff would have ample opportunity to present the Court with all of the information it would need for its decision. Plaintiff did so on March 9, 2012. (D.E. # 56.) Similarly, the Court gave Defendants ten days to respond to Plaintiff's supplemental briefing, which they did on March 19, 2012. (D.E. # 57.)

Although the Court denied Plaintiff's First Motion for Summary Judgment, the Court interpreted the Guaranties and found that "full payment" under them included "thirty percent (30%) of all of the 'Obligations' (the liabilities of Borrower to Bank, interest, attorneys' fees, expenses of collection and costs) and thirty percent (30%) of the attorneys' fees, expenses of collection, and costs owed by Guarantor for the enforcement of the Guaranties." (Order, D.E. # 33, at 21.) The Court further noted that "if the provisions of the Guaranties are not met, liability may be apportioned jointly and severally between Labry, Benton, and Adams for the full payment of the Obligations at the discretion of Plaintiff." (*Id.* at 22.) Similarly, the Court interpreted the limitation clause to apply to interests, costs, and reasonable attorney's fees, meaning that "Plaintiff may recover no more than thirty percent (30%) of all interest, attorney's

2

fees, expenses of collection, and costs." Therefore, if the provisions of the Guaranties were not met, Defendants would be jointly and severally liable for thirty percent (30%) of all interest, attorneys' fees, expenses of collection, and costs. (*Id.*) Under the law of the case, this interpretation controlled the Court's evaluation of Plaintiff's Second Motion for Summary Judgment.

In its Order Granting Plaintiff's Second Motion for Summary Judgment ("the Order") (D.E. # 58) on March 23, 2012, the Court articulated four main holdings. First, it held that Defendants had not paid the amount they owe under the Guaranties in light of the Borrower Entities' default and that they would be required to pay Plaintiff under the Guaranties if Plaintiff did not breach its duty of good faith and fair dealing or its duty to protect the collateral. (Order, D.E. # 58, at 18.) Second, the Court declined to apply issue preclusion arising from the Florida Lawsuit to the case before it. (*Id.* at 20-21.) Third, the Court found that the Guaranties and the Four Notes did not contain a requirement for Plaintiff to foreclose; instead, they indicated that Plaintiff had the option of pursuing either the Borrowing Entities or the Guarantors for the remaining payments under the Four Notes. (*Id.* at 26.) However, the Court held that Defendants had failed to direct the Court to a specific provision requiring Plaintiff to foreclose on the AB Lots and that Defendants "failed to present the Court with facts sufficient to create a dispute as to whether Plaintiff acted in bad faith when it elected to pursue them under the Guaranties." (*Id.* at 27.) Finally, the Court held that Plaintiff did not cause the AB Lots' alleged unmarketability and that Plaintiff did not fail to protect the collateral when it did not foreclose on them. (*Id.* at 30.)

Shortly after the Court issued the Order, Defendants filed the Motion for Reconsideration (D.E. # 59) currently before the Court.

## **STANDARD OF REVIEW**

While the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders, . . . [d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."[1]  The Sixth Circuit has recognized that "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."[2]

Moreover, the Western District of Tennessee has enacted Local Rule 7.3 ("L.R. 7.3"), which governs Motions for Revision of Interlocutory Orders.  L.R. 7.3 identifies Rule 54(b) as the relevant procedural rule under which to bring a Motion for Reconsideration, and it also notes that "[m]otions to reconsider interlocutory orders are not otherwise permitted."[3]  In addition to the Sixth Circuit's requirements, the Western District of Tennessee also requires Motions for Reconsideration to specifically show one of three elements:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.[4]

---

[1]  *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (quotation omitted).

[2]  *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

[3]  L.R. 7.3(a).

[4]  L.R. 7.3(b).

Notably, L.R. 7.3 prohibits parties' Motions for Reconsideration from "repeat[ing] any oral or written argument made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised."[5]

## ANALYSIS

Defendants have moved for reconsideration on the third section of L.R. 7.3(b): the Court's alleged manifest failure to consider the law and facts which were before it when it ruled on Plaintiff's Motion for Summary Judgment.[6] However, the Court notes that Defendants have not challenged its ruling regarding the interpretation of the Guaranties and Four Notes, nor have they sought reconsideration of the Court's finding that they would be required to pay Plaintiff absent a breach of either the duty to protect the collateral or duty of good faith and fair dealing.

### Breach of the Duty to Protect the Collateral

In their Motion, Defendants fixate on two sentences in the portion of the Order regarding Plaintiff's duty to protect the collateral as the basis for their argument that the Court's ruling "is predicated upon facts which were not pled by either party and which are fundamentally wrong."[7] Defendants point out that they were merely investors in entities which were members of the various LLCs which ultimately purchased the AB Lots and argue that their lack of involvement in the decisions not to develop the AB Lots precludes them from having to pay under the Guaranties.[8] They decry the Court's "reliance upon Defendants allegedly signing or seeing any

---

[5] L.R. 7.3(c).

[6] (Defs.' Mot., D.E. # 59, at 1.)

[7] (Defs.' Mot., D.E. # 59-1, at 3.)

[8] (*Id.* at 3-4. ("Neither side has pled that Defendants saw or signed the mortgages, development agreements, or notes.")

document other than the" Guaranties.[9]  Additionally, Defendants aver that Plaintiff sent the notice of default two and a half years after the AB Lots were acquired, and it "would have been well aware that the penalties were already running with the land at the time default was first noticed."[10]  Thus, Defendants assert that they did not fail to develop the property in the original two-year build out period, and they assert that genuine issues of material fact remain as to their ability to sell and market the land "at [the] first notice of default and as to [Plaintiff's] knowledge on the date that it first noticed default of these penalties."[11]

In response, Plaintiff argues that Defendants misconstrue the Order's reasoning: "[r]egardless of whether Defendants had the ability or responsibility to develop the property themselves, the point is that the fines that accrued on the property did so because of the failure to build on the AB Lots, but such failure was not caused by Plaintiff."[12]  Plaintiff submits that Defendants "completely miss the basis of the Court's decision on this issue, where it is clear that the Court's decision hinged upon the fact that the Plaintiff did not cause the fines or alleged unmarketability of the AB Lots."[13]

The Court agrees with Plaintiff: it is Defendants who have misinterpreted the Court's holding, not the Court who manifestly failed to consider facts or law.  The Court held that Plaintiff's failure to foreclose did not equate to a failure to protect.  At bottom, Defendants disagree with the Court's holding, yet they still fail to point the Court to a portion in the

---

[9]     (*Id.* at 5.)

[10]    (*Id.*)

[11]    (*Id.* at 5-6.)

[12]    (Pl.'s Resp., D.E. # 61, at 2.)

[13]    (*Id.*)

6

Guaranties and Four Notes which required Plaintiff to foreclose on the AB Lots.  Although they argue that it was the Florida Guarantors and the Borrower Entities, rather than themselves, who failed to build on the AB Lots within the two-year build-out requirement, that argument does not change the fact that Plaintiff did not cause the fines to accrue, meaning that it had no duty to affirmatively act to remove the fines.  That Defendants did not know of the two-year build-out requirement because they did not negotiate it or read or sign the underlying documents when they executed the Guaranties is also of little import: they are guarantors bound by the terms of the Guaranties they signed.  The Court again declines to rewrite the Guaranties to remove the fines, and Defendants' Motion is **DENIED** in this regard.

### Breach of the Duty of Good Faith and Fair Dealing

In their Motion, Defendants argue that Plaintiff first sent the notice of default after the two-year build out period had passed, thereby providing evidence of bad faith.[14]  Defendants again point out that they had no role in negotiating any of the documents with Plaintiff, and they assert that Robbie Roberts ("Roberts"), one of Plaintiff's former loan officers, now works for the developer.[15]  Defendants' arguments are best summarized in their own words:

> Where the facts show that the bank chose to pursue limited guarantors for more
> than the amount that they actually guaranteed, had not dealt with those investors
> at the outset of the loan, knew of the finds and penalties running with the land,
> and had its loan officer go to the developer whose fines were set to be eliminated
> by a foreclosure, genuine issues have been raised as to the bank's actions in
> exercising its discretion to foreclose or not to foreclose.[16]

---

[14]   (Defs.' Mot., D.E. # 59-1, at 6.)

[15]   (*Id.* at 7.)

[16]   (*Id.*)

In response, Plaintiff points out that Defendants still have not identified a specific provision in the Four Notes or Guaranties requiring Plaintiff to foreclose.[17] It also argues that the Court "should not reconsider the facts it has already considered, but even if it did, the result would be the same, because it would take a rewrite of the provisions in the Notes and Guaranties for Defendants' arguments to prevail."[18]

As above, the Court finds that Defendants' arguments have already been presented to the Court and are without merit. That Plaintiff sent the notice of default after the two-year build-out period had passed does not indicate bad faith; rather, communicating a notice of default generally relates to failure to pay under an agreement and is independent of a failure to conform to the build-out requirement. And one employee's change of employer from Plaintiff to the developer is insufficient to create a question of fact as to whether Plaintiff acted in bad faith. Regardless, as noted in both of the Court's Orders on Summary Judgment in 2011 and 2012, Defendants have again failed to cite to any specific language in the Guaranties or the Four Notes, thereby failing to tie the alleged breach of the duty of good faith and fair dealing to any part of the express contractual terms as required by Florida law. Accordingly, Defendants' arguments are without merit and their Motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is **DENIED**. The Court notes that in its Order Granting Plaintiff's Second Motion for Summary Judgment, the Court ordered Plaintiff to submit a Motion for Damages, Attorney's Fees, Interest, and Costs within thirty days of entry of the Order. Plaintiff's Motion was due April 23, 2012, and Plaintiff failed to file a Motion.

---

[17]    (Pl.'s Resp., D.E. # 61, at 3.)

[18]    (*Id.*)

Because Plaintiff has not submitted any documentation substantiating the dollar figure it alleges to be outstanding, Plaintiff shall have an additional fourteen (14) days from entry of this Order to file an appropriate Motion. Defendant shall have fourteen (14) days to respond.

    **IT IS SO ORDERED.**

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          UNITED STATES DISTRICT JUDGE

                                          Date: May 24, 2012.